# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>SUNRA COFFEE LLC,<br><br>    Debtor. | Case No. 09-01909<br>Chapter 7 |
| HAWAII NATIONAL<br>BANCSHARES, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>SUNRA COFFEE LLC, et al.,<br><br>    Defendants. | Adv. Pro. No. 10-90009<br><br><br><br><br><br>Re: Docket No. 100 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON EXEMPT STATUS OF CERTAIN ASSETS OF JUDGMENT DEBTOR

On July 5, 2011, the court held an evidentiary hearing on judgment creditor Hawaii National Bancshares, Inc.'s, Motion for Charging Order and Ex Parte Motion for Writ of Execution After Judgment, filed March 7, 2011 (dkt. 96 and 100). At the evidentiary hearing, Theodore Young and Lisa Ayabe appeared for judgment creditor Hawaii National Bancshares, Inc. ("HNB"), and Jerrold K. Guben and Jeffery Flores appeared for judgment debtor Michael Hiroshi Nekoba. The parties submitted written closing arguments on July 22, 2011. HNB declined

the court's invitation to file a supplemental post-hearing memorandum responding to Mr. Nekoba's arguments about this court's jurisdiction.

Based on the evidence, the court makes the following

**FINDINGS OF FACT**

*Procedural Background*

1. In 2008, HNB sued Sunra Coffee LLC ("Sunra"), Mr. Nekoba, and others in state court. HNB alleged that Sunra had failed to repay a loan made in 2006, that HNB was entitled to collect the loan from Sunra as the borrower and from Mr. Nekoba and the other defendants as guarantors, and that HNB was entitled to foreclose on certain collateral. Mr. Nekoba's wife is not liable to HNB on this debt.

2. HNB duly served its complaint on Mr. Nekoba. He did not answer and the state court entered his default. The state court entered a decree of foreclosure.

3. Before the foreclosure sale was completed, Sunra filed a chapter 11 bankruptcy petition in this court. The court granted relief from the automatic stay to permit HNB to complete its foreclosure action in state court and also appointed a chapter 11 trustee to administer Sunra's estate.

4. On February 24, 2010, the trustee removed the foreclosure action to

U.S. Bankruptcy Court - Hawaii    #10-90009    Dkt # 149    Filed 10/18/11    Page 2 of 16

this court. In the notice of removal, the trustee alleged that the foreclosure action was a core proceeding and consented to the entry of final orders or judgments by the bankruptcy court. The trustee duly served the notice of removal on Mr. Nekoba. Mr. Nekoba did not file a response and did not appear in the case until much later.

5. The commissioner conducted a foreclosure sale. HNB filed motions to confirm the sale and for deficiency judgments against the defendants. Mr. Nekoba did not respond to either motion. On September 23, 2010, the court entered a money judgment against Mr. Nekoba and the other defendants in the amount of $2,405,247.82. Mr. Nekoba did not appeal or seek relief from the judgment.

6. HNB examined Mr. Nekoba under oath and learned that he has interests in various business entities. HNB filed a motion for a charging order against Mr. Nekoba's membership interest in Tropic Land LLC and a motion for a writ of execution to seize Mr. Nekoba's personal property, including his stock in various corporations.

7. After the writ of execution was served, Mr. Nekoba appeared (for the first time) and claimed that most of his property was exempt. He requested an evidentiary hearing to determine which of his assets were protected as tenancy by

3

U.S. Bankruptcy Court - Hawaii   #10-90009   Dkt # 149   Filed 10/18/11   Page 3 of 16

the entireties property.

8.  The evidentiary hearing was held on July 5, 2011. At the hearing, the parties focused their presentations on the membership interest in Tropic Land LLC, and the stock of The Mortgage Group, Inc. HNB did not contest Mr. Nekoba's other claims of exemption.

9.  At the hearing, Mr. Nekoba argued, for the first time, that the court lacked subject matter jurisdiction over HNB's claims against him. Mr. Nekoba expanded on those arguments in his post-hearing brief.

## *Historical Facts*

10.  Mr. Nekoba is a sophisticated investor and businessperson. He holds a degree in accounting. He practiced as a certified public accountant with an international accounting firm, and later with a local affiliate of the same firm, for thirteen years. He has practiced as a financial consultant for twenty-six years after leaving the accounting firm. He has owned and operated many businesses.

11.  In 1995, Mr. Nekoba formed The Mortgage Group, Inc., a Hawaii corporation ("TMG"), to engage in the mortgage brokerage business.

12.  At the inception, Mr. Nekoba and four other individuals owned the stock of TMG. In 1997, Mr. Nekoba bought out the other four stockholders and became the sole stockholder. In 1999, Mr. Nekoba transferred the stock to himself

4

and his wife as tenants by the entireties. The stock certificate and stock transfer ledger both state that Mr. and Mrs. Nekoba held the stock as tenants by the entireties.

13. Some evidence suggests that Mr. Nekoba owned the TMG stock individually, and not with his wife as tenants by the entirety. In his judgment debtor examination, Mr. Nekoba testified that "[TMG] is just owned by me . . . ." He provided a personal financial statement dated December 31, 2010, which states that the stock of TMG was his, but also stated that other securities were owned by him and his wife, and still others were owned by his wife. He testified at the judgment debtor examination that the statement was true and correct to the best of his knowledge. Finally, in 2008 and 2009 TMG issued K-1 tax forms which state that Mr. Nekoba owned 100% of TMG's stock. Mr. Nekoba submitted those forms to the taxing authorities with his tax returns, under penalty of perjury.

14. At the evidentiary hearing, Mr. Nekoba testified that, in preparing the 2010 financial statement and his testimony at the judgment debtor examination, he relied on the K-1 forms that TMG's tax accountant had prepared, and overlooked the fact that the K-1 forms were in error. He testified that he did not realize that he had made an error until he located the original stock certificate and stock book in response to the sheriff's levy and saw that the certificates were issued to him and

5

his wife as tenants by the entireties.

15. I find that Mr. and Mrs. Nekoba owned the stock of TMG as tenants by the entireties since 1999. The stock certificates so state and there was no evidence that the certificates were forged or backdated. Mr. and Mrs. Nekoba provided financial statements to HNB dated May 17, 2006 and March 31, 2007, before the foreclosure litigation began, which state that they owned the stock together. Mr. Nekoba's explanation for the 2008 and 2009 K-1s, the 2010 personal financial statement, and his testimony at the judgment debtor examination is plausible.

16. Tropic Land LLC was formed in 2005 to acquire and develop a parcel of land in Nanakuli. The original members were Mr. Nekoba, Clyde Kaneshiro, and Tom Enomoto.

17. Mr. Nekoba testified that, at the inception, he wanted his membership interest to belong to himself and his wife as tenants by the entireties. Mr. Enomoto objected because he did not want to have any of the members' wives become involved in the company if something happened to one of the three men. In 2006, Mr. Enomoto transferred his membership interest to a corporation. In January 2010, Mr. Nekoba learned that Mr. Enomoto's sister owned the corporation to which Mr. Enomoto had transferred his membership interest. Mr.

6

Nekoba then renewed his request to transfer his membership interest to himself and his wife, and his fellow members agreed in the summer of 2010. In December 2010, Mr. Nekoba signed a document assigning his membership interest to himself and his wife, effective as of September 30, 2010.

18. Mr. Nekoba intended to hinder, delay, or defraud HNB when he transferred his interest in Tropic Land LLC to himself and his wife as tenants by the entireties. He made the transfers shortly after HNB recovered a multimillion dollar judgment against him. He was aware of HNB's foreclosure suit and was served with the papers, so he knew that he had sizable personal exposure to HNB. He is a sophisticated and experienced businessperson and investor. He knew that the tenancy by the entireties protects assets from creditors. The transfer did not diminish his possession and control of the asset. He received nothing in return for the transfer. His testimony that he had always wanted to put the membership interest in the entireties estate, and simply carried out that desire when his fellow members no longer objected, is implausible and contrary to the great weight of the evidence.

19. Neither Mr. or Mrs. Nekoba took the membership interest in good faith or for a reasonably equivalent value.

20. Mr. Nekoba testified that the members had contributed cash to permit

7

U.S. Bankruptcy Court - Hawaii   #10-90009   Dkt # 149   Filed 10/18/11   Page 7 of 16

Tropic Land LLC to meet its obligations, and that his share of the contributions came from a bank account which belonged to him and his wife, as tenants by the entireties.  Mr. Nekoba also testified, however, that he was the sole holder of the bank account, that the account was not denominated as a tenancy by the entireties account, and that he and his wife each had the power to write checks on the account without both spouses' signatures.

Based on the foregoing findings of fact, the court draws the following

## CONCLUSIONS OF LAW

### *Validity of Judgment*

1.     Mr. Nekoba argues that, under <u>Stern vs. Marshall</u>, 131 S. Ct. 2594 (2011), the court lacked subject matter jurisdiction to enter the final judgment against him.

2.     Mr. Nekoba has not filed a motion to set aside the judgment.  His failure to follow proper procedure is a sufficient reason to reject his argument.  The court has an independent duty, however, to ascertain its own subject matter jurisdiction.

3.      For two reasons, I conclude that subject matter jurisdiction is not an impediment to the enforcement of the judgment.

   a.     First, <u>Stern v. Marshall</u> does not limit the bankruptcy court's

U.S. Bankruptcy Court - Hawaii   #10-90009   Dkt # 149   Filed  10/18/11   Page 8 of 16

subject matter jurisdiction. A court which lacks subject matter jurisdiction cannot hear the matter at all and must dismiss it. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). Stern v. Marshall deals with the power of the bankruptcy court to enter a final judgment, and does not limit the bankruptcy court's power to hear pretrial matters or to provide proposed findings and conclusions and a recommended judgment to the district court. Further, the parties cannot create subject matter jurisdiction by consent, Arbaugh, 546 U.S. at 514, but even under Stern v. Marshall the bankruptcy court can enter judgment against a consenting party. (See below.)

    b. Second, a party cannot challenge the court's subject matter jurisdiction after the judgment has become final. Travelers Indem. Co. v. Bailey, 129 S.Ct. 2195, 2205 (2009); Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 n. 9 (1982); Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 375 (1940). Mr. Nekoba did not appeal the judgment and it is now final. Mr. Nekoba can no longer question the court's subject matter jurisdiction.

  4. Even if Mr. Nekoba's attacks on the judgment were not procedurally barred, I would reject them on the merits.

  5. Following Stern, the bankruptcy court must ask five questions to

U.S. Bankruptcy Court - Hawaii #10-90009 Dkt # 149 Filed 10/18/11 Page 9 of 16

ascertain the extent of its power to decide a particular case.  First, is the matter within the bankruptcy jurisdiction which Congress granted to the district courts? Second, is the matter one which Congress permitted the district courts to refer to the bankruptcy courts? Third, has the district court exercised its power to refer the matter to the bankruptcy court? Fourth, is the matter one in which Congress permitted the bankruptcy court to enter a final judgment? Fifth, does the Constitution permit the bankruptcy court to enter final judgment?

6. Congress granted jurisdiction over the subject claims to the district court. HNB's claims against Sunra arise in Sunra's bankruptcy case, within the meaning of 28 U.S.C. § 1334. HNB's claims against Mr. Nekoba are related to Sunra's bankruptcy case, id., and are "so related [to HNB's claims against Sunra] that they form part of the same case or controversy under Article III of the United States Constitution," id. § 1367(a); In re Pegasus Gold Corp., 394 F.3d 1189, 1194-95 (9th Cir. 2005); In re Davis, 177 B.R. 907, 912 (B.A.P. 9th Cir. 1995).

7. Congress authorized the district courts to refer to the bankruptcy courts virtually all cases within the district court's bankruptcy jurisdiction. 28 U.S.C. § 157(a). Mr. Nekoba does not argue that any exception (such as section 157(b)(5) or (d)) applies. There was no demand for a jury trial. Id. § 157(e).

8. The district court for this district has referred to the bankruptcy court

10

U.S. Bankruptcy Court - Hawaii   #10-90009   Dkt # 149   Filed 10/18/11   Page 10 of 16

all matters that it may so refer. LR 1070.1.

9. Congress has empowered the bankruptcy court to enter final judgments in cases under title 11 and all "core proceedings" arising under title 11 or arising in a bankruptcy case. 28 U.S.C. § 157(b)(1). In a proceeding that is not a core proceeding but is otherwise related to a bankruptcy case, the bankruptcy court can enter final judgment with the consent of the parties or, in the absence of consent, enter proposed findings and conclusions for the district court's de novo review. Id. § 157(c).

    a. Standing alone, HNB's claims against Mr. Nekoba might not be core proceedings. But of course HNB's claims against Mr. Nekoba do not stand alone; rather, HNB properly asserted its claims against Mr. Nekoba, as a guarantor, along with its claims against Sunra, its principal obligor and the debtor in the bankruptcy case. HNB's claims against Sunra, the debtor in the bankruptcy case, are undoubtedly "core proceedings." Id. § 157(b)(2)(A), (B), (K), (N), and (O). It is at least arguable that this entire adversary proceeding is therefore a "core proceeding." Compare In re Lockridge, 303 B.R. 449, 455-56 (Bankr. D. Ariz. 2003) ("[U]nder § 157(b) the core determination is made with respect to the entire proceeding, not with respect to each particular claim made within a proceeding . . . Section § 1334(b) makes clear that jurisdiction exists, or does not exist, for the

11

U.S. Bankruptcy Court - Hawaii   #10-90009   Dkt # 149   Filed 10/18/11   Page 11 of 16

entire 'proceeding'"), with In re Exide Technologies, 544 F.3d 196, 206 (3d Cir. 2008) ("Each claim within the same cause of action must be analyzed claim by claim and each alone must satisfy the test in order to be considered a core proceeding within meaning of Bankruptcy Code; a single cause of action may include both core and non-core claims, and the mere fact that a non-core claim is filed with a core claim will not mean the second claim becomes 'core.'").

    b. Even assuming that HNB's claims against Mr. Nekoba are not core proceedings, the bankruptcy court had statutory authority to enter final judgment against him based on his consent. While subject matter jurisdiction may not be conferred by consent, Arbaugh, 546 U.S. at 514, a party may waive its right to an Article III court. Consent to the bankruptcy court's entry of final judgment may be express or implied from the parties' conduct. Mann v. Alexander Dawson, Inc. (In re Mann), 907 F.2d 923, 926 (9th Cir. 1990) (finding a party, through his conduct, consented to the bankruptcy court's jurisdiction); In re OCA, Inc., 551 F.3d 359, 368 (5th Cir. 2008) (finding failure to object in the bankruptcy court to constitute implied consent); In re G.S.F. Corp., 938 F.2d 1467, 1476-77 (1st Cir. 1991) (noting that explicit consent is not necessary; implied consent will suffice); In re Men's Sportswear, 834 F.2d 1134, 1137-38 (2d Cir. 1987) (holding that the creditor's failure to object to jurisdiction or to any part of the appeals process

12

constituted implied consent to the bankruptcy court's final adjudication). See also Roell v. Withrow, 538 U.S. 580, 590 (2003) (holding that consent to proceedings before a magistrate judge can be inferred from a party's conduct during litigation).

        c.     Mr. Nekoba impliedly consented to the court's entry of final judgment. Mr. Nekoba had the opportunity and the obligation to respond to the trustee's allegation, in the notice of the removal, that the matter was a core proceeding. He did not do so. See Fed. R. Bankr. P. 7012(b). Mr. Nekoba also had the opportunity to challenge the court's power by responding to the motions for deficiency judgment and to confirm the sale. He did not do so. Finally, Mr. Nekoba had opportunity to appeal or seek relief from the judgment. He did neither. Mr. Nekoba later expressly invoked the court's jurisdiction when he requested an evidentiary hearing to demonstrate that he and his wife held certain properties as tenants by the entirety.

    10.    The final question is whether the Constitution permits the bankruptcy court to enter final judgment. Mr. Nekoba's consent also answers this question in the affirmative. Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 847–51 (1986) (recognizing that a party may waive its constitutional right to an Article III court).

13

U.S. Bankruptcy Court - Hawaii   #10-90009   Dkt # 149   Filed 10/18/11   Page 13 of 16

## *Hawaii's Tenancy by the Entireties*

11. Under Hawaii law, spouses can own property as tenants by the entireties. "The interest of a husband or a wife in an estate by the entireties is not subject to the claims of his or her individual creditors during the joint lives of the spouses." Sawada v. Endo, 57 Haw. 608, 612 (1977).

12. The theory behind the tenancy by the entireties is that marriage creates a new legal entity – the marital entirety – comprised of both spouses, and that neither spouse acting independently of the other can voluntarily or involuntarily transfer or encumber the property belonging to the marital entirety. "Neither husband nor wife has a separate divisible interest in the property held by the entirety that can be conveyed or reached by execution. . . . The indivisibility of the estate, except by joint action of the spouses, is an indispensable feature of the tenancy by the entirety." Sawada, 57 Haw. at 1295-96.

13. Spouses can hold personal as well as real property by the entireties, but in any case they must clearly establish their intent to create that tenancy. Traders Travel Intern., Inc., v. Howser, 69 Haw. 609, 613 (1988).

14. "Absent a contrary intent by both spouses, personalty proceeds from a sale of land held by the entirety are also property held by the entirety." In re Au's Estate, 59 Haw. 474, 478 (1978).

14

U.S. Bankruptcy Court - Hawaii   #10-90009   Dkt # 149   Filed  10/18/11   Page 14 of 16

15. There are limits on the protective power of the tenancy by the entireties. For example, "the creation of a tenancy by the entirety may not be used as a device to defraud existing creditors." Sawada, 57 Haw. at 1297; see also Valvanis v. Milgroom, 529 F.Supp.2d 1206, 1211-14 (D. Haw. 2007).

*The Mortgage Group, Inc.*

16. Mr. Nekoba and his wife held the stock of TMG as tenants by the entireties from 1999, before Mr. Nekoba guaranteed Sunra's debt to HNB in 2006, to the present.

17. Mrs. Nekoba is not liable to HNB on the debt.

18. There is no allegation or evidence that Mr. and Mrs. Nekoba placed the stock in the entireties estate as a device to defraud HNB or any creditor.

19. The stock of TMG is not subject to HNB's claims.

*Tropic Land LLC*

20. Mr. Nekoba transferred his membership interest in Tropic Land LLC to himself and his wife as tenants by the entireties with the intent to hinder, delay, and defraud HNB, one of his creditors, within the meaning of Haw. Rev. Stat. § 651C-4.

21. Mr. Nekoba has not clearly established his and his wife's intent that the bank account from which Mr. Nekoba funded his capital contributions was a

U.S. Bankruptcy Court - Hawaii   #10-90009   Dkt # 149   Filed 10/18/11   Page 15 of 16

tenancy by the entireties account. Mr. Nekoba testified that the account was not so denominated (at the time of the contributions) because the bank refused to do so. He also testified that both he and his wife, acting individually, could write checks on the account. One of the key attributes of the tenancy by the entireties is that both spouses must act jointly to transfer the entireties property.

22. HNB is entitled to avoidance of the transfer of the membership interest in Tropic Land LLC and is entitled to enforce its remedies as a judgment creditor against that interest, including a charging order under Haw. Rev. Stat. § 428-504.

Counsel for HNB shall submit an appropriate order.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 10/18/2011